The Second National Bank of Danville, Appellant, v. The Fidelity and Casualty Company of New York, Appellee.

Gen. No. 8,847.

Opinion filed January 14, 1935.

GUNN, PENWELL & LINDLEY, of Danville, for appellant.

H. L. HOWARD, of Chicago, and DOBBINS & DOBBINS, of Champaign, for appellee.

MR. JUSTICE ALLABEN delivered the opinion of the court.

This was an action in assumpsit brought by The Second National Bank of Danville, Illinois, against The Fidelity and Casualty Company of New York for recovery on a bond issued by the defendant for the amount of a robbery loss. The plaintiff's amended declaration upon which this suit was tried consisted of two counts; the first count charges that on July 21, 1930, the defendant was engaged in the business of executing and delivering fidelity and casualty bonds, insuring against robbery, theft and hold-up of property in transit within the United States; that on said date for a consideration of $750 the defendant issued a policy to The Second National Bank of Danville, in the amount of $25,000, for losses sustained through robbery, larceny, theft or hold-up while the property of the plaintiff was in transit in the United States within 50 miles of its main office, and requiring notice to be given of such loss. The plaintiff further alleges that on December 22, 1932, while the bond was still in force, by extension agreement, the plaintiff had in its immediate employment at its office one O. P. Clark, who was directed by the plaintiff to transport to The First National Bank of Georgetown, $9,350 of plaintiff's money; and that while so transporting the money the said O. P. Clark was robbed of $9,001; that notice was given in accordance with the terms of the bond, and payment was refused by the defendant.

The second count of the declaration charges substantially the same facts as the first, except the bond sued upon and its extensions were set out *in haec verba*.

To this declaration defendant filed plea of the general issue, and other special pleas to which special pleas a demurrer was sustained, and the case was tried on the general issue.

The evidence shows that on July 21, 1930, the defendant executed and delivered to the plaintiff a banker's blanket bond, which by subsequent renewals continued in force until July 21, 1933. Inasmuch as there is no controversy as to most of the provisions of the bond, the same will not be set out, but only those portions which are in dispute. The evidence further shows that the plaintiff was located at Danville, Illinois, and that the United States Fuel Company, one of its customers, operated a coal mine at Georgetown, Illinois, some 10 miles distant from Danville; that the United States Fuel Company issued payroll checks twice a month, and plaintiff by contract with the fuel company undertook the service of providing facilities for cashing the payroll checks at Georgetown. To provide this service plaintiff entered into a contract with the First National Bank of Georgetown whereby in consideration of the payment of a service charge of 10 cents per $100 for checks cashed through the Georgetown bank, a special trust fund account in the First National Bank of Georgetown for the payment of fuel company's checks was set up and the contract specifically stated that the title to said trust fund was to remain in The Second National Bank of Danville, and the balance of any moneys deposited after the payment of checks on pay days was to be returned. From the time this contract was entered into on the 18th day of March, A. D., 1932, until shortly before December 22, 1932, the plaintiff caused currency to cover the payroll to be shipped by United States mail to the Georgetown bank. Finally the post office department refused to carry the currency, and O. P. Clark, president of The First National Bank of Georgetown, and a friend and acquaintance of plain-

tiff bank, sometime during August, 1932, had a talk
with Mr. McClenathan and Mr. Douglas, president and
cashier respectively of The Second National Bank of
Danville. Mr. Clark told Mr. McClenathan that he
had received notice from the post master that after a
few weeks they would not ship the money, and Mr.
McClenathan said: "Well, if they do that we will
have to make an arrangement to send the cash from
here down there." The evidence also shows that a
month or six weeks later Clark had another conversa-
tion with Mr. McClenathan and Mr. Douglas, in which
Clark said that the post master had notified him that
they would not carry the money any longer; that Mc-
Clenathan said: "We will have to send it down from
here. Can't you come up and get the money? Haven't
you an officer who can come with you?" Clark then
said that he thought the chief of police would come
with him. The result of these conversations was an
understanding by which Clark was to furnish his auto-
mobile and gasoline and a guard, and call at plaintiff's
bank for the currency at such time or times as he might
see fit, for which services no arrangement was made
for him to receive any compensation from plaintiff
bank, for the use of his car, for the guard, or for his
own services, for the transportation of the money.
Pursuant to this arrangement Clark made a number
of trips carrying currency, and on December 22, 1932,
obtained from the plaintiff bank the sum of $9,350 in
currency, signed a receipt for the money, in his own
name, and with a guard, named Evans, after attend-
ing to some of his own business in Danville, proceeded
by automobile to take the money to Georgetown to be
deposited in the special trust fund account.

On the way to Georgetown robbers shot Clark
and the guard, and escaped with $9,001. On the day
of the robbery Mr. Douglas notified the local agent of
the defendant company of the loss, and after a refusal
of payment by defendant company, this suit was

brought. Plaintiff's statement, brief and argument states that the case was tried by the court with a jury, but the original record (p. 88) shows that trial by a jury was waived. It is further very apparent that such was the fact. The court filed a written opinion and holding the defendant not liable, and entered a judgment in its favor in bar of the action, and for costs. From this order an appeal was taken by the plaintiff to this court.

The only question for determination by this court is whether the money which was stolen was "in the custody of any of the employees . . . of the insured" at the time of the robbery, or, in other words, was O. P. Clark an employee of the insured under the terms of the bond furnished by the defendant. Section 6 of this bond defines the word "employees" as follows:

"The word 'employees,' as used herein, shall be deemed to mean officers, clerks and other persons in the immediate employ of the insured during the currency of this bond, at its office or offices covered hereunder, but not to mean any person or persons employed by any other banking institution which the insured shall have taken over, unless the underwriter shall have given its written consent thereto, nor to mean any persons, firms, or corporations furnishing transportation, trucking, messenger service, or the like, or any person or persons employed thereby."

It is obvious from the testimony in this case that plaintiff did not have any agreement with Clark to stand any of the expense incurred by him in transporting the money; it did not pay the guard who accompanied him, and it did not give Clark any compensation for anything that he did personally. He was not held to account by plaintiff bank for the manner in which he transported the funds, or the time he called for them or delivered them to the Georgetown bank, nor was he accountable for taking any particu-

lar route or handling the cash in any particular denominations or containers. In other words, there were no directions given by the plaintiff bank to Clark in any way respecting the transportation of the funds. It must be borne in mind that O. P. Clark was the president of the Georgetown bank, and was so employed throughout this entire period; and further that the Georgetown bank not only profited under its contract with The Second National Bank of Danville, to the extent of 10 cents per $100 for checks cashed by it but also benefited by this transfer of currency through increased business in its bank, and by being able every two weeks to replenish its currency supply, all of which should make it anxious to continue its arrangement to cash fuel company checks and overcome the difficulties of transferring the money which arose by the refusal of the post office department to carry it by mail. In making a new arrangement to carry the money Clark obviously was working for the best interests of the Georgetown bank, and when he supplied his automobile, a guard, and his own time, to transport these funds he was doing it for and on behalf of The First National Bank of Georgetown of which he was president.

Plaintiff's counsel seek by a lengthy analysis of the words "employ" both noun and verb, "employee," to so construe these words, together with the definition set forth in the bond to mean anyone who might be doing anything in which the plaintiff bank was interested, as covered by this bond. We are not impressed by the argument, ingenious though it may be, and feel that the same would lead to a strained construction never contemplated by either party.

Plaintiff's counsel also seek to put a construction on the expression "persons, firms, or corporations furnishing transportation, trucking, messenger service, or the like" to make it mean that anyone to come under this clause must be *"Engaged in the Business"*

of furnishing transportation, trucking, messenger service, or the like. We feel that goes beyond the bounds of fair and reasonable construction. It seems to us very clear that Clark was furnishing transportation and messenger service—if not for the Georgetown bank, then on his own behalf. To hold otherwise it seems to us would pervert the plain terms of the bond and place upon the defendant a burden never contemplated by any of the parties to the bond. The cases cited by plaintiff set forth propositions of law which are well recognized, and with which we have no quarrel, but we do not feel that any of them have any application to the facts in this case. It appears to us that throughout the entire transaction from the inception of the original contract through the negotiations for the transfer of the money after the government refused to transfer it, up to and including the day of the robbery, that at all times, O. P. Clark was acting as the representative of the Georgetown bank, and we feel that this is supported by the proof of loss filed by the plaintiff in this case, part of which we will here quote: ''The Second National Bank has employed the First National Bank in Georgetown, or its officers, for a consideration based upon the amounts of money paid out semi-monthly, to transfer said money from Danville to Georgetown and pay same to the employes of the U. S. Fuel Company.'' This is competent proof and may be considered in a determination of the issues. *Kiesewetter v. Supreme Tent of Knights of Maccabees,* 227 Ill. 48; *North American Fire Ins. Co. v. Zaenger,* 63 Ill. 464.

The consideration for transporting these funds was 10 cents per $100 on the cashing of checks, and ran to The First National Bank of Georgetown. Besides that, as mentioned before, to have this arrangement continued brought people to the Georgetown bank, and furnished it with currency with which to do business.

The trial judge found that Clark was not an employee of plaintiff and that plaintiff could not recover on the bond. With his decision we are in complete agreement. The judgment is, therefore, affirmed.

*Judgment affirmed.*